SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (*pro hac vice application to be filed*)
gmaatman@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

SEYFARTH SHAW LLP
Timothy L. Hix (SBN 184372)
thix@seyfarth.com
Meagan S. O'Dell (SBN 280086)
modell@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendant
WOODWARD HRT, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO SILVA, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WOODWARD HRT, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT WOODWARD HRT, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>(Los Angeles Superior Court, Case No. 21STCV42692)<br><br>Complaint Filed:   November 19, 2021<br>Trial Date:          None Set |

78805872v.1

# TABLE OF CONTENTS

I.  BACKGROUND ..........................................................................................1

II.  TIMELINESS OF REMOVAL ...................................................................2

III.  CLASS ACTION FAIRNESS ACT REMOVAL ........................................3

    A.  The Putative Class Exceeds 100..........................................................3

    B.  Plaintiff And Defendant Are Minimally Diverse ................................3

        1.  Plaintiff Is A Citizen Of California.........................................3

        2.  Defendant Woodward Is Not A Citizen Of California .......................4

        3.  Doe Defendants Have No Bearing On Diversity Jurisdiction.............5

    C.  The Amount In Controversy Exceeds The Statutory Minimum....................6

        1.  Minimum Wage Violations and Overtime Violations Claims ..........11

        2.  Unpaid Meal Period Premiums Claim ..................................15

        3.  Unpaid Rest Period Premiums Claim ....................................16

        4.  Non-Compliant Wage Statements Claim................................18

        5.  Unreimbursed Business Expenses Claim ...............................19

        6.  Approximate Aggregate Amount In Controversy, Exclusive of Attorneys' Fees ................................................................20

        7.  Attorneys' Fees .................................................................21

        8.  Approximate Aggregate Amount In Controversy .............................23

IV.  VENUE ....................................................................................................23

V.  NOTICE TO STATE COURT AND TO PLAINTIFF ............................23

VI.  PRAYER FOR REMOVAL ......................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego Abrego v. The Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) ...................................................................... 5, 6, 7

*Arias*,
   936 F.3d at 927 ........................................................................................... 14

*Armstrong v. Church of Scientology Int'l*,
   243 F.3d 546 (9th Cir. 2000) ......................................................................... 3

*Arreola v. Finish Line*,
   2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ................................................. 9

*Boone v. Primeflight Aviation Servs., Inc.*,
   2018 WL 1189338 (E.D.N.Y Dec. 20, 2018) ............................................... 13

*Brady v. Mercedes-Benz USA, Inc.*,
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) ....................................................... 21

*Campbell v. Vitran Exp., Inc.*,
   471 Fed. App'x 646 (9th Cir. 2012) ............................................................. 22

*Chavez v. JPMorgan Chase & Co.*,
   888 F.3d 413 (9th Cir. 2018) ....................................................................... 21

*Coleman v. Estes Express Lines, Inc.*,
   730 F. Supp. 2d 1141 (C.D. Cal. 2010) ......................................................... 9

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ......................................................................................... 7

*Feao v. UFP Riverside, LLC*,
   2017 WL 2836207 (C.D. Cal. June 29 2017) ................................................. 9

*Fong v. Regis Corp.*,
   2014 WL 26996 (N.D. Cal. Jan. 2, 2014) .................................................... 22

*Franke v. Anderson Merchandisers LLC*,
   2017 WL 3224656 (C.D. Cal. July 28, 2017) ................................................ 9

ii

78805872v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fristoe v. Reynolds Metals Co.*,
    615 F.2d 1209 (9th Cir. 1980) ................................................................. 5

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
    899 F.3d 785 (9th Cir. 2018) ................................................................. 21

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ............................................................... 21

*Gant v. ALDI, Inc.*,
    2020 WL 1329909 (C.D. Cal. March 20, 2020) ..................................... 14

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) .............................................................. 7, 8

*Gutierrez v. Stericycle, Inc.*,
    2017 WL 599412 (C.D. Cal. Feb. 14, 2017) ......................................... 22

*Hamilton v. Wal–Mart Stores, Inc.*,
    2017 WL 4355903 (C.D. Cal. Sept. 29, 2017) ...................................... 22

*Herrera v. Carmax Auto Superstores California, LLC*,
    2014 WL 12586254 (C.D. Cal. June 12, 2014) ..................................... 22

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) .............................................................................. 4, 5

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ............................................................... 10

*Jones v. Tween Brands, Inc.*,
    2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) .......................................... 9

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ................................................................. 3

*Korn v. Polo Ralph Lauren Corp.*,
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................... 8

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) .................................................................. 3

*Longmire v. HMS Host USA, Inc.*,
    2012 WL 5928485 (S.D. Cal. Nov. 26, 2012) ....................................... 21

DEFENDANT'S SECOND NOTICE OF REMOVAL

78805872v.1

*Lucas v. Michael Kors (USA), Inc.*,
    2018 WL 2146403 (C.D. Cal. May 9, 2018) ............................................... 22

*Lyon v. W.W. Grainger, Inc.*,
    2010 WL 1753194 (N.D. Cal. Apr. 29, 2010) ..................................... 15, 17

*Muniz v. Pilot Travel Ctrs. LLC*,
    2007 WL 1302504 (E.D. Cal. May 1, 2007) ...................................... 8, 21

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ............................................................... 2, 17

*Oda v. Gucci Am. Inc.*,
    2015 WL 93335 (C.D. Cal. Jan. 7, 2015) ................................................ 14

*Otay Hydraulics, Inc. v. Safety-Kleen Sys., Inc.*,
    2013 WL 1898573 (C.D. Cal. May 6, 2013) ........................................... 10

*Patel v. Nike Retail Servs., Inc.*,
    58 F. Supp. 3d 1032 (N.D. Cal. 2014) .................................................. 14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................ 22

*Ray v. Wells Fargo Bank, N.A.*,
    2011 WL 1790123 (C.D. Cal. May 9, 2011) ........................................... 14

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d, 1025 (C.D. Cal. 2017) ................................................. 9

*Rodriguez v. AT&T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) .......................................................... 7, 8

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) .............................................................. 7

*Schiller v. David's Bridal, Inc.*,
    2010 WL 2793650 (E.D. Cal. July 14, 2010) .......................................... 7

*Soliman v. Philip Morris Inc.*,
    311 F. 3d 966 (9th Cir. 2002) ............................................................. 5

*Stanley v. Distribution Alternatives, Inc.*,
    2017 WL 6209822 (C.D. Cal. Dec. 7, 2017) .......................................... 14

iv

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ................................................................... 3

*Thompson v. Target Corp.*,
    2016 WL 4119937 (C.D. Cal. Aug. 2, 2016) (Hon. Jesus G. Bernal, J.) .................. 10

*Torrez v. Freedom Mortg., Corp.*,
    2017 WL 2713400 (C.D. Cal. June 22, 2017).......................................... 9

*Utne v. Home Depot U.S.A., Inc.*,
    2017 WL 5991863 (N.D. Cal. Dec. 4, 2017)........................................... 13

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ............................................................ 8

*Wheatley*,
    2019 WL 688209 (C.D. Cal. Feb. 19, 2019) ........................................ 14

*Yocupicio v. PAE Grp., LLC*,
    2014 WL 7405445 (C.D. Cal. Dec. 29, 2014), *rev'd on other grounds*,
    795 F.3d 1057 (9th Cir. 2015) ............................................................ 22

**State Cases**

*AHMC Healthcare, Inc. v. Superior Court*,
    24 Cal. App. 5th 1014 (2018) ............................................................ 13

*Brinker Rest. Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) ................................................................... 17

*Caliber Bodyworks, Inc. v. Sup. Ct.*,
    134 Cal. App. 4th 365 (2005) ........................................................... 18

*Falk*,
    237 Cal. App. 4th at 1462, n.12 ............................................. 15, 17, 19

*Murphy v. Kenneth Cole Prods., Inc.*,
    40 Cal. 4th 1094 (2007) ................................................................... 15

**Federal Statutes**

28 U.S.C. § 84(c) ..................................................................................... 23

28 U.S.C. § 1332..................................................................................... 5

DEFENDANT'S SECOND NOTICE OF REMOVAL

28 U.S.C. § 1332(a) ................................................................... 7

28 U.S.C. § 1332(c) ................................................................... 1

28 U.S.C. § 1332(c)(1) ........................................................... 4, 5

28 U.S.C. § 1332(d) ............................................................. 6, 23

28 U.S.C. § 1332(d)(2) ..................................................... *passim*

28 U.S.C. § 1332(d)(2)(A) ..................................................... 3, 5

28 U.S.C. § 1332(d)(5) ............................................................... 3

28 U.S.C. § 1332(d)(5)(B) ......................................................... 3

28 U.S.C. § 1332(d)(6) ........................................................... 3, 6

28 U.S.C. § 1367(a) ................................................................. 23

28 U.S.C. § 1391(a) ................................................................. 23

28 U.S.C. § 1441 ..................................................................... 23

28 U.S.C. § 1441(a) ......................................................... 1, 5, 23

28 U.S.C. § 1446 ....................................................................... 1

28 U.S.C. § 1446(b) ................................................................... 2

28 U.S.C. § 1446(c)(1) ............................................................... 2

28 U.S.C. § 1446(d) ................................................................. 24

28 U.S.C. § 1453 ....................................................................... 1

Pub. L. 112–63, Dec. 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28
    U.S.C. § 1446(c)(2)) ........................................................... 7

**State Statutes**

Business and Professions Code § 17200 ................................... 15

Cal. Bus. & Prof. Code § 17208 .............................................. 12

Cal. Civ. Proc. Code § 338 ................................................. 12, 19

DEFENDANT'S SECOND NOTICE OF REMOVAL

78805872v.1

Cal. Civ. Proc. Code § 340(a) ................................................................ 18

Cal. Lab. Code § 226 ............................................................................ 18

Cal. Lab. Code § 226.7 .................................................................. 15, 17

Cal. Lab. Code § 512 ...................................................................... 15, 17

Cal. Lab. Code § 2802 .......................................................................... 19

Cal. Labor Code § 2802(a) .................................................................. 19

California Business and Professions Code §§ 17200, *et seq.* ............................................ 1

California Labor Code § 226.7 ...................................................... 15, 17

Labor Code § 226(e) ............................................................................ 18

Labor Code § 226.7(c) .......................................................................... 17

Labor Code § 1194 ............................................................................... 12

**Rules**

California Rules of Court Rule 3.400 ..................................................... 2

Federal Rules of Civil Procedure Rule 23 ........................................... 11

**Regulations**

IWC Wage Order ........................................................................... 15, 17

Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005),
    *reprinted in* 2005 U.S.C.C.A.N. 3, 40 .......................................... 6

**Other Authorities**

U.S. Bureau of Labor Statistics, Databases, *Tables & Calculators by
    Subject: Wireless telephone services in U.S. city average, all urban
    consumers, not seasonally adjusted*, *available at*
    https://data.bls.gov/timeseries/ CUUR0000SEED03?output_view=data ................. 20

DEFENDANT'S SECOND NOTICE OF REMOVAL

78805872v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ALFREDO SILVA AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Woodward HRT, Inc. ("Woodward" or "Defendant") hereby files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California.  This Court has original jurisdiction under 28 U.S.C. § 1332(c) and (d)(2) — the Class Action Fairness Act of 2005 ("CAFA").  Removal is proper for the following reasons:

## I.    BACKGROUND

1.    On November 19, 2021, Plaintiff Alfredo Silva ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of Los Angeles, titled "*Alfredo Silva, an individual, on behalf of himself and on behalf of all persons similarly situated, v. Woodward HRT, Inc., a Corporation; and DOES 1 through 50, inclusive,*" Case No. 21STCV42692 ("Complaint").  The Complaint asserts seven causes of action against Woodward for:  (1) "Unlawful Business Practices" under California Business and Professions Code §§ 17200, *et seq.* (the "UCL"); (2) "Failure To Pay Minimum Wages"; (3) "Failure To Pay Overtime Compensation"; (4) "Failure To Provide Required Meal Periods"; (5) "Failure To Provide Required Rest Periods"; (6) "Failure to Provide Accurate Itemized Statements"; and (7) "Failure to Reimburse Employees for Required Expenses."

2.    The Complaint seeks to certify two classes consisting of:  (1) an Unfair, Unlawful, and Deceptive Business Practices ("UCL") Class comprised of "all individuals who are or previously were employed by [Woodward] in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court"; and (2) a "California Labor Sub-Class" consisting of "all members of the [UCL Class] who are or

1

78805872v.1

previously were employed by [Woodward] in California and classified as non exempt employees . . . at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court."  (Ex. A, Compl., ¶¶ 27, 37.)

3.    On January 5, 2022, Woodward's registered agent for service of process, via personal service, received the Summons, Complaint, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, and Alternative Dispute Resolution Information Package.  (Declaration of Mindy Stevens ("Stevens Decl."), ¶ 3.)  A true and correct copy of this service packet is attached as **Exhibit A to the Declaration of Mindy Stevens ("Exhibit A")**.  (*Id.*)

4.    On January 25, 2022, Plaintiff's counsel electronically served Woodward's counsel with a Notice of Order Deeming Matter Complex and Initial Status Conference Order dated January 25, 2022.  Two orders were attached to the Notice of Order: (1) a January 21, 2022 Order determining the case to be "Complex according to Rule 3.400 of the California Rules of Court"; and (2) an Initial Status Conference Order (Complex Cases and Class Actions).  A true and correct copy of the Notice of Order and two accompanying orders are attached as **Exhibit B to the Declaration of Timothy L. Hix ("Exhibit B")**.  (*Id.*)

5.    **Exhibits A and B** constitute all process, pleadings, and orders served upon Woodward and filed in this action as of the filing of this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

6.    This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty days of service upon Woodward. 28 U.S.C. § 1446(b) & (c)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).

2

DEFENDANT'S NOTICE OF REMOVAL

### III. <u>CLASS ACTION FAIRNESS ACT REMOVAL</u>

7.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2), as the action:  (1) involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2), (d)(5) & (d)(6).

### A.     **The Putative Class Exceeds 100**

8.     The number of putative class members in this action is greater than 100.  28 U.S.C. § 1332(d)(5)(B).  Indeed, Plaintiff's employer, Woodward, has employed at least approximately 935 hourly non-exempt employees in the State of California during the relevant time period.  (*See* Stevens Decl., ¶ 8.)

### B.     **Plaintiff And Defendant Are Minimally Diverse**

9.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Woodward (which is a citizen of Delaware and Colorado).

### 1.     **Plaintiff Is A Citizen Of California**

10.     For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state.").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is *prima facie* the domicile").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed.").

78805872v.1

11.     Plaintiff alleges that he "has been employed by [Woodward] in California since 1996." (Ex. A, Compl., ¶ 3.)  In addition, based on Woodward's records, throughout the period of his employment with Woodward Plaintiff was a resident of California.  (Stevens Decl., ¶ 6.)  For instance, when Plaintiff began his employment with Woodward, Plaintiff provided Woodward with an address in Panorama City, California for his home address.  (*Id*.)  Plaintiff thereafter provided Woodward with an address in Palmdale, California, reflecting a change in home address as of March 1997.  (*Id*.)  Additionally, the mailing address reflected on Plaintiff's paystubs from approximately March 1997 forward is in Palmdale, California.  (*Id*.)  Furthermore, a public records search for Plaintiff's current address reveals that he currently resides in Palmdale, California.  (Hix Decl., ¶ 4.)  Accordingly, on information and belief following a reasonable investigation, Plaintiff is a citizen of California.

## 2.     Defendant Woodward Is Not A Citizen Of California

12.     Defendant Woodward is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. §1332(c)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

13.     Defendant Woodward is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Stevens Decl., ¶ 4.)  Thus, for purposes of diversity jurisdiction, Woodward is a citizen of Delaware.

14.     Further, as shown below, Woodward's principal place of business is, and has been at all times since this action commenced, located in the State of Colorado.  (*Id*. ¶ 5.) Thus, for purposes of diversity jurisdiction, Woodward is also a citizen of Colorado.

15.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a

4

78805872v.1

corporation's high-level officers direct, control, and coordinate its activities on a day-to-day basis. *Id.* at 80-81, 88, 92-93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.").

16.    Under the "nerve center" test, Colorado emerges as Woodward's principal place of business. Woodward's corporate headquarters are located in Fort Collins, Colorado, where Woodward's high-level officers direct, control, and coordinate Woodward's activities. (Stevens Decl., ¶ 5.) Woodward's high-level corporate officers maintain offices in Colorado, and many of Woodward's corporate level functions are performed in the Colorado office. (*Id.*) Additionally, many of Woodward's executive and administrative functions are directed from the Fort Collins, Colorado headquarters. (*Id.*)

17.    Therefore, for purposes of diversity of citizenship, Woodward is, and has been at all times since this action commenced, a citizen of the States of Delaware and Colorado. 28 U.S.C. § 1332(c)(1).

18.    Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Colorado, minimal diversity exists for purposes of CAFA. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("§ 1332(d)(2)(A) requires only minimal diversity, not complete diversity").

### 3.    Doe Defendants Have No Bearing On Diversity Jurisdiction

19.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Thus, the existence of Doe

78805872v.1

Defendants 1 through 50 does not deprive this Court of jurisdiction. *Abrego Abrego*, 443 F.3d at 679-80 n.4 (rule applied in CAFA removal).

### C.    The Amount In Controversy Exceeds The Statutory Minimum

20.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case," as "[o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions," and "[i]ts provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.    Plaintiff's Complaint does not allege a specific amount in controversy for the classes he purports to represent. Plaintiff does, however, assert that "[t]he amount in controversy for the aggregate claim of [UCL Class] Members is under five million dollars," "[t]he amount in controversy for [Plaintiff] individually does not exceed the sum or value of $75,000," and "[t]he amount in controversy for the aggregate claim of [California Labor Sub-Class] Members is under five million dollars." (Ex. A, Compl., ¶¶ 4, 24, 37.) But even where a complaint alleges that the aggregate amount in controversy

6

78805872v.1

is less than $5 million, a defendant can remove the case under CAFA by proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

22.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub. L. 112–63, Dec. 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2)) (emphasis added); *accord Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (as "the complaint fails to allege a sufficiently specific total amount in controversy[,] . . . we therefore apply the preponderance of the evidence burden of proof to the removing defendant"); *Abrego Abrego*, 443 F.3d at 683 ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met."). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[W]here a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

23.    To satisfy this standard, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

78805872v.1

1

2

3

4

5

6

24.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

7

8

9

10

11

12

25.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *1, 3-4 (E.D. Cal. May 1, 2007) (emphasis omitted) (denying motion for remand of a class action for claims under the California Labor Code for failure to provide meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

13

14

15

16

17

18

19

20

21

26.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino*, 506 F.3d at 700-01 (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

22

23

24

25

26

27

27.    If a plaintiff asserts statutory violations, the court may assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

28

8

78805872v.1

*Muniz*, 2007 WL 1302504, at \*4 (internal citation omitted); *see also Arreola v. Finish Line*, 2014 WL 6982571, at \*4 (N.D. Cal. Dec. 9, 2014) (internal quotations omitted) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

28.     Numerous courts in this District have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at \*2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice——or other similar language——and where the plaintiff offers no evidence rebutting this violation rate."); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at \*5 (C.D. Cal. June 29 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at \*3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint could "reasonably be interpreted to imply nearly 100% violation rates"); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d, 1025,1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate——especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at \*3 (C.D.

9

78805872v.1

Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

29.     Furthermore, it is well established that the amount in controversy is calculated **at the time of removal**, not as of the time of the filing of the operative pleading. *Thompson v. Target Corp.*, 2016 WL 4119937, at \*9 (C.D. Cal. Aug. 2, 2016) (Hon. Jesus G. Bernal, J.) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)) ("Ninth Circuit precedent clearly holds that the amount in controversy for purposes of CAFA jurisdiction is calculated as of 'the time of removal.'"); *see also Otay Hydraulics, Inc. v. Safety-Kleen Sys., Inc.*, 2013 WL 1898573, at \*2 (C.D. Cal. May 6, 2013) (internal quotations omitted) (noting "the amount in controversy must be assessed at the time of removal").

30.     Here, the Complaint seeks relief on behalf of "all individuals who are or previously were employed by [Woodward] in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court," and "all members of the [UCL Class] who are or previously were employed by [Woodward] in California and classified as non exempt employees . . . at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court." (Ex. A, Compl., ¶¶ 27, 37.) Furthermore, Plaintiff alleges that Woodward "as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked and recorded by [Plaintiff] and [UCL Class] Members, always to the benefit of [Woodward], so that during the course of their employment, [Plaintiff] and [UCL Class] Members are paid less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time." (*Id.* ¶ 8; *see also id.* ¶¶ 81, 105 (alleging Woodward failed to pay required overtime and reimburse employees for required business expenses pursuant to company "policy and practice"); *id.* ¶¶ 92, 96, 101 (alleging Woodward "from time to time" failed to provide employees with required meal and rest periods and accurate itemized wage statements).)

DEFENDANT'S NOTICE OF REMOVAL

78805872v.1

31.     The alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000, as shown by the calculations below.  All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.  Likewise, these calculations are based on the proposed classes alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that the classes proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Woodward expressly reserves the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.  However, for purposes of removal, Woodward bases its calculations on the allegations, the facts known to it, and the class definitions pled by Plaintiff.[1]

### 1.     Minimum Wage Violations and Overtime Violations Claims

32.     Plaintiff seeks payment for unpaid wages and alleged overtime violations as a result of Woodward's alleged "wage practice of paying [Plaintiff] and the other members of the [California Labor Sub-Class] without regard to the correct amount of time they work."  (Ex. A, Compl., ¶ 66; *see also id.*, Prayer for Relief, ¶ 2(B).) Specifically, Plaintiff alleges that Woodward "requires [him] to work while clocked out during what is supposed to be [Plaintiff's] off-duty meal break," that he "worked off the clock with respect to time spent undergoing mandatory drug testing or any other testing and/or examination required as a condition of employment," that Woodward "as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked and recorded by [Plaintiff] and [UCL Class] Members, always to the benefit of [Woodward], so that during the course of their employment, [Plaintiff] and [UCL Class] Members are paid less than they would have been paid had they been paid

---

[1] Although unless otherwise noted the following calculations cover the time period of November 19, 2017 to December 31, 2021, based on the allegations in Plaintiff's Complaint, Woodward notes that the amount in controversy would be even higher if the calculations were to cover the time period of November 19, 2017 to the date of removal.

11

78805872v.1

for actual recorded time rather than 'rounded' time," and that Woodward required "employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into [Woodward's] timekeeping system for a workday." (*Id.* ¶ 8; *see also id.* ¶ 10 (alleging Woodward failed to include Plaintiff's and putative class members' "incentive compensation as part of the employees' 'regular rate of pay' for purposes of calculating overtime pay and meal and rest break premium pay"); *id.* ¶¶ 17, 19 (alleging Woodward "underpays sick pay wages . . . by failing to pay such wages at the regular rate of pay").)  California Labor Code section 1194 permits "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

33.    The statute of limitations for recovery for minimum wage and overtime violations under Labor Code section 1194 is three years.  Cal. Civ. Proc. Code § 338.  However, Plaintiff also alleges a claim for pay as part of his claim under the UCL.  (Ex. A, Compl., ¶ 51.)  According to the allegations of his Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.  Thus, for determining the amount in controversy, the four-year statute of limitations applies.  Accordingly, the proposed class period for Plaintiff's minimum wage and overtime claims is from **November 19, 2017 to present**.

34.    The Complaint is silent as to the amount of alleged unpaid wages and overtime, thereby precluding precise estimates of the amount in controversy.  (Ex. A, Compl., ¶¶ 74, 90); *see also Muniz*, 2007 WL 1302504, at *4.  Plaintiff does allege that Woodward's failure to pay all wages and overtime owed was done as a "uniform practice" and "as a matter of established company policy and procedure."  (Ex. A, Compl., ¶ 8.)

35.    During the relevant time period identified in the Complaint, there were at least 935 current and former non-exempt hourly employees who are or were employed by

12

78805872v.1

Woodward in California. (Stevens Decl., ¶ 8.) These 935 current and former employees worked for a total of approximately 105,790 workweeks. (*Id.*) The average hourly rate of pay for these individuals is approximately $34.39 per hour during the proposed class period. (*Id.* ¶ 9.) The average shift length for the putative UCL Class is around 8.5 hours. (*Id.* ¶ 10.)

36.    Although Woodward denies that Plaintiff (or any putative class member) is entitled to any unpaid wages, assuming 60 minutes of unpaid wages (30 of those minutes calculated at the average hourly rate and the other 30 minutes calculated at the average overtime rate) per week for only 40%[2] of the 935 putative class members, the amount in controversy would be approximately **$1,819,165** [(105,790 Total Work Weeks * 0.5 hours * $34.39 Average Hourly Rate) + (105,790 Total Work Weeks * 0.5 hours * $51.59 Average Hourly Overtime Rate) * 40% = $1,819,164.84].

37.    **Assuming 50%** of the putative class were underpaid, the amount in controversy would be approximately **$2,273,956** [(105,790 Total Work Weeks * 0.5 hours * $34.39 Average Hourly Rate) + (105,790 Total Work Weeks * 0.5 hours * $51.59 Average Hourly Overtime Rate) * 50% = $2,273,956.05].

38.    **Assuming 60%** of the putative class were underpaid, the amount in controversy would be approximately **$2,728,747** [(105,790 Total Work Weeks * 0.5

---

[2] Courts have regularly held that rounding policies are not illegal if a "bare majority" lose compensation. *See AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014, 1028 (2018) (holding as legally compliant a facially neutral rounding policy where 52.1% of employees lost time); *Boone v. Primeflight Aviation Servs., Inc.*, 2018 WL 1189338, at *8-9, 14 (E.D.N.Y Dec. 20, 2018) (applying California federal authority to uphold the legality of a rounding policy where 41.5% of employees were underpaid); *Utne v. Home Depot U.S.A., Inc.*, 2017 WL 5991863, at *2-3 (N.D. Cal. Dec. 4, 2017) (holding as legally compliant a facially neutral rounding policy where 43% of shifts were underpaid). Thus, an assumption that only 40% of the putative class were underpaid is more than reasonable given that it means that 60% of the putative class were overpaid. Based on the above authority, Plaintiff will likely need to show that somewhere close to 55% of putative class members (or more) were negatively impacted by the rounding policy.

DEFENDANT'S NOTICE OF REMOVAL

hours * $34.39 Average Hourly Rate) + (105,790 Total Work Weeks * 0.5 hours * $51.59 Average Hourly Overtime Rate) * 60% = $2,728,747.26].

39.     Accordingly, the amount in controversy on Plaintiff's minimum wage and overtime claims is between approximately **$1,819,165** and **$2,728,747**.

40.     Although Woodward denies Plaintiff's allegations, these are very conservative estimations for purposes of calculating the amount in controversy under CAFA removal.  Indeed, the Ninth Circuit and numerous district courts have held that an estimate of at least 30 minutes per class member per week (*i.e.*, three times Woodward's assumption) is appropriate in light of Plaintiff's allegations.  *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

14

78805872v.1

## 2. Unpaid Meal Period Premiums Claim

41.     Plaintiff alleges that "[a]s a result of their rigorous work schedules, [Plaintiff] and other [California Labor Sub-Class] Members were from time to time not fully relieved of duty by [Woodward] for their meal periods," in alleged violation of "the applicable Wage Order and Labor Code." (Ex. A, Compl., ¶ 92.)

42.     As a result, Plaintiff seeks "[m]eal and rest period compensation pursuant to Cal. Lab. Code §§ 226.7, 512 and the applicable IWC Wage Order." (*Id.*, Prayer for Relief, ¶ 2(D).)

43.     California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

44.     The statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the UCL. *See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the

78805872v.1

proposed class period for the unpaid meal period premium claim is from **November 19, 2017 to present**.

45.     Woodward pays its non-exempt employees every two weeks.  (Stevens Decl., ¶ 11.)  Accordingly, there are 26 pay periods per year.  During the proposed class period, the potential class members worked a total of approximately 105,790 workweeks, or approximately 52,895 pay periods (105,790 / 2).  (*Id.* ¶ 8.)

46.     Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$1,819,059.05** ($34.39/hour x 52,895 pay periods).

47.     Woodward's estimate is conservative.  Woodward assumes only one meal period violation for each two-week pay period, which is consistent with Plaintiff's allegation that Woodward "from time to time failed to provide all the legally required off-duty meal breaks."  (*Id.* ¶ 92.)  In other words, if an employee worked 10 days during a two-week pay period, Woodward has conservatively calculated only a single meal period violation during that pay period.

### 3.     Unpaid Rest Period Premiums Claim

48.     According to the Complaint, Plaintiff and the California Labor Sub-Class Members "were from time to time required to work in excess of four (4) hours without being provided ten (10) minute rest periods," were denied "a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours," and were denied "a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more."  (*Id.* ¶ 96.)

49.     Plaintiff further alleges that "[a]s a result of their rigorous work schedules, [Plaintiff] and other [California Labor Sub-Class] Members were periodically denied their proper rest periods by [Woodward] and [Woodward's] managers."  (*Id.*)

DEFENDANT'S NOTICE OF REMOVAL
78805872v.1

50.     In addition, Plaintiff alleges that he and the Class Members were not paid premium pay penalties pursuant to Labor Code § 226.7(c) for any of the workdays that [Woodward] failed to provide them timely, uninterrupted rest breaks.  (*Id.* ¶ 97.)

51.     As a result, Plaintiff seeks payment of "[m]eal and rest period compensation pursuant to Cal. Lab. Code §§ 226.7, 512 and the applicable IWC Wage Order."  (*Id.*, Prayer for Relief, ¶ 2(D).)

52.     Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon*, 2010 WL 1753194 at *4.

53.     The statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years.  *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the UCL.  *See Falk*, 237 Cal. App. 4th at 1462, n.12.  Accordingly, the proposed class period for the unpaid rest period claim is from **November 19, 2017 to present**.

54.     Based on the allegations of the Complaint, assuming each potential class member is entitled to one hour of premium pay per pay period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$1,819,059.05** ($34.39/hour x 52,895 pay periods).

55.     Woodward's estimate is conservative.  Woodward assumes only one rest period violation during each two-week pay period, which is consistent with Plaintiff's allegation that he and the California Labor Sub-Class Members were not provided with

17

the required rest periods "from time to time." (*E.g.*, *id.* ¶ 96.)  In other words, if an employee worked 10 days during a two-week pay period, Woodward has calculated only a single rest period violation during that pay period.

### 4.    Non-Compliant Wage Statements Claim

56.    Plaintiff alleges that "[f]rom time to time, . . . [Woodward] failed to issue to [Plaintiff] an itemized wage statement that lists all the requirements under California Labor Code 226 *et seq*."  (*Id.* ¶ 101.)  Plaintiff further alleges that he "and the other members of the [California Labor Sub-Class] may elect to recover liquidated damages of fifty dollars ($50.00) for the initial pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation in a subsequent pay period pursuant to Cal. Lab. Code § 226, in an amount according to proof at the time of trial (but in no event more than four thousand dollars ($4,000.00) for [Plaintiff] and each respective member of the [California Labor Sub-Class] herein)."  (*Id.* ¶ 102.)

57.    Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiff filed his Complaint on November 19, 2021, the statutory period for the claim under California Labor Code § 226 runs from **November 19, 2020 to present**.

58.    During the period of November 19, 2020 to December 31, 2021, there are approximately 589 potential class members with 21,334 total weeks worked. (Stevens Decl., ¶ 13.)  Based on the number of weeks worked, Woodward issued approximately 10,667 wage statements to these employees (21,334 / 2).  When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement, the amount in controversy on this claim would equal no less than **$1,037,250** ([$100 x 10,667 pay periods] - [$50 x 589 employees]).

DEFENDANT'S NOTICE OF REMOVAL

78805872v.1

### 5.    Unreimbursed Business Expenses Claim

59.    Plaintiff claims Woodward "failed to reimburse [Plaintiff] and the [California Labor Sub-Class] members for expenses which included, but were not limited to, costs related to using their personal cellular phones on behalf of and for the benefit of [Woodward]."  (Ex. A, Compl., ¶ 105.)

60.    Plaintiff seeks to recover from Woodward "reimbursement for expenditures or losses incurred by himself and the [California Labor Sub-Class] members in the discharge of their job duties for [Woodward], or their obedience to the directions of [Woodward], with interest at the statutory rate and costs under Cal. Lab. Code § 2802." (*Id.* ¶ 106.)

61.    Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  Cal. Labor Code § 2802(a).

62.    The statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the unreimbursed business expenses claim is from **November 19, 2017 to present**.

63.    During the period of November 19, 2017 to December 31, 2021, there are approximately 935 potential class members, who worked a total of approximately 105,790 workweeks. (Stevens Decl., ¶ 8.)  That number of weeks worked equates to approximately 24,413 total months worked (105,790 weeks worked x (12 months per year/52 weeks per year)).

64.    Assuming each potential class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy

19

78805872v.1

for the unpaid business expenses would equal no less than **$73,239** ($3/month x 24,413 months).

65.    Woodward's estimate is conservative. For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions and from different providers. According to the U.S. Bureau of Labor Statistics, the average monthly cell phone services charge for the time period of December 2017 to December 2021 is approximately $47.38 per month. U.S. Bureau of Labor Statistics, Databases, *Tables & Calculators by Subject: Wireless telephone services in U.S. city average, all urban consumers, not seasonally adjusted*, *available at* https://data.bls.gov/timeseries/ CUUR0000SEED03?output_view=data. Assuming that employees use their cell phones for business purposes for only 6.3% of the time during each month, their expenses would be approximately $3 per month.

### 6.    Approximate Aggregate Amount In Controversy, Exclusive of Attorneys' Fees

66.    Although Woodward denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is between approximately **$6,567,772 and $7,477,354**, calculated as follows:

| | | |
|---|---|---|
| · | **$1,819,165 - $2,728,747** | Minimum Wage and Overtime Claims (40% of putative class members to 60% of putative class members being underpaid) |
| · | **$1,819,059** | Unpaid Meal Period Premiums Claim |
| · | **$1,819,059** | Unpaid Rest Period Premiums Claim |
| · | **$1,037,250** | Non-Compliant Wage Statement Claim |
| · | **$73,239** | Unreimbursed Business Expenses Claim |
| · | **$6,567,772 - $7,477,354** | **Total** |

20

78805872v.1

67.     The figures above do not take into account Plaintiff's claim for attorneys' fees.

### 7.     Attorneys' Fees

68.     Plaintiff also seeks attorneys' fees on all seven of his Causes of Action.  (Ex. A, Compl., Prayer for Relief, ¶ 3(C).)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

69.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.,* 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) (citing *Brady,* 243 F. Supp. 2d at 1010-11) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Muniz,* 2007 WL 1302504, at *4 (attorneys' fees appropriately included in determining amount in controversy).

70.     In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)," but, "[r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.");

DEFENDANT'S NOTICE OF REMOVAL

*Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *11 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

71.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *Hamilton v. Wal–Mart Stores, Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage-and-hour case allowing an estimated fee award of twenty-five percent of the plaintiff's damages in calculating the amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage-and-hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims"); *Yocupicio v. PAE Grp., LLC*, 2014 WL 7405445, at *6 (C.D. Cal. Dec. 29, 2014) (same), *rev'd on other grounds*, 795 F.3d 1057 (9th Cir. 2015); *Herrera v. Carmax Auto Superstores California, LLC*, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014) (holding that in CAFA actions twenty-five percent benchmark "to be added to any claim for which attorneys' fees [was] available"); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

72.    Even under the conservative benchmark of 25% of the total recovery for the applicable claims and using the low end of exposure of $6,567,772, attorneys' fees alone

78805872v.1

would be approximately **$1,641,943** in this case.  Using the high-end exposure, the amount of attorneys' fees goes up to approximately **$1,869,338.50** [$7,477,354 * 25%].

### 8.    Approximate Aggregate Amount In Controversy

73.    Although Woodward denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, including attorneys' fees, is between **$8,209,715** and **$9,346,692.50.**  This amount far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

74.    Because this action involves 100 or more putative class members, minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

75.    To the extent Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

## IV.    VENUE

76.    Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in Los Angeles County Superior Court of the State of California, which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

77.    Written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and his counsel and, together with a true and correct copy of this Notice of

23

DEFENDANT'S NOTICE OF REMOVAL

78805872v.1

Removal, will be filed with the Clerk of the Los Angeles County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VI.   **PRAYER FOR REMOVAL**

78.    WHEREFORE, Defendant Woodward HRT, Inc. prays that this civil action be removed from Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.

Date:  February 4, 2022                    SEYFARTH SHAW LLP


                                           By: */s/ Timothy L. Hix*
                                                Gerald L. Maatman, Jr.
                                                Timothy L. Hix
                                                Meagan S. O'Dell
                                                Attorneys for Defendant
                                                WOODWARD HRT, INC.

24

78805872v.1